The fellow court has six divisions now in session on behalf of Justice Mary L. Wickler, aside. Please be seated. Would you call the case, please? Case No. 1-22. There are two groups, three quiet people versus zero smarts. Hi, I'm Gracie Lester. I'm from the Office of the State Health Defender, and I'd like to reserve three minutes. P-A-L-A-C-I-O I'm going to give you some, even when you get up here, because this microphone is for recording, but it will not amplify it. There are people all the way in the back who want to hear you. Counsel. Thank you. Good afternoon. In honor of counsel, David Greenspan, standing in on behalf of Morris and on behalf of the people of the state of Illinois. Okay. Is this a last-minute stand-in, or have you had some time? That depends. Does this work in two weeks' last minute? No, absolutely not. That's EI. Thank you. I don't want to mispronounce it. Whenever you're ready. Thank you. May it please the Court. My name is Grace Palacio, and I represent the defendant, Farrell Morris. Farrell was convicted of first and attempted first-degree murder and sentenced to consecutive terms of 55 and 45 years in prison. He was only 16 years old at the time of the offenses. When this Court remanded this case for resentencing, it did so with a specific directive that this time the trial court give, quote, meaningful consideration of Farrell's youth and attendant characteristics as well as their effect on him, close quote, in accordance with the Miller factors as codified in Illinois' juvenile sentencing statute. However, on remand, the sentencing court reimposed the identical 100-year sentence. But didn't the trial court judge follow the appellate court's directions? I mean, the trial court judge considered everything. Well, the argument I would make is just because the trial court made a facial going through those specific factors as they're listed out, the words that the judge actually said revealed a lack of careful consideration of these actual factors. And so the trial court's failure to adequately and properly consider these factors as required under the statute resulted in an improper sentence because it did not do what the statute required of him. And I think we can see this. Despite the trial court's assertions that it considered Farrell's youth and attendant circumstances, quote, very well, this statement is belied by the court's own words. The court's comments in relation to the statutory factors were, at best, inadequate, and at worst, dismissive. And just as this court found at the first sentencing hearing, it did not show careful consideration of the factors or their effect on Farrell. I think if we actually look at what the court says, it's really revealing about the lack of true consideration. So, for example, when it came to the factor about considering a person's family, home environment, education, social background, including a history of parental neglect, physical abuse, or childhood trauma, evidence was presented that, you know, Farrell grew up without a father. When he was born, his father had already been incarcerated in Wisconsin. So he was raised by his mother, who raised him with his three other siblings. And the evidence showed that his mother was physically abusive. She beat him. And not only that, she allowed family friends to sexually abuse him. And notably, at the time of resentencing, she had been charged with the attempted murder of Farrell's younger brother. So in response to this, this is what the court said about Farrell's mother. She didn't treat him the best. That was the extent of the court's comments about this factor. The statutory argument and the factors, you don't even have to get to the constitutional argument, correct? Correct. All right. Since he's on direct appeal, all his statutory rights are informed. Correct. Okay. So I'd like to go over some more of these factors just to show the extent of the court's failure to really consider them. Another thing that was presented as mitigation was Farrell's mental health history. So he started special education in kindergarten. And by the time he was 12 years old, he had been put in a psychiatric facility and he was getting treatment. And he was diagnosed with both bipolar disorder and anger management. And in response to this, the court said, quote, saw a psychiatrist until the age of 12 when his mother took him to address, I love this, anger management issues, anger management. That's what the court's response was to this history of mental health. And then when the court discussed Farrell's mother. I love this is you quoting the court, correct? Yes, the court said, I love this. Okay. When the court was discussing depression, the court said, well, who would it be depressed being in county jail in the penitentiary serving a lot of time? Anybody would be depressed. Not only is this generally minimizing of this mental health history, it also ignores that Farrell's mental health problems long predated these offenses. So to say that, you know, he's depressed or he's acting out simply because he is, you know, who would it be because they're in custody? The court is not truly considering what these factors mean. Well, are a lot of his mental health problems self-reported? They are self-reported, but that's generally. Is there anything that's not self-reported? No. I'm not sure exactly. There were follow-ups with the psychiatric hospital. So he was definitely treated in the psychiatric hospital. A lot of the PSI just generally in most cases are due to self-reporting. But it's consistent. His PSI from his first sentencing hearing and his second sentencing hearing both show him talking about a history of mental health issues. You know, he was put in that psychiatric facility at 12, 13, and 15. And at 15 is when he reported his first suicide attempt, the first of what he reports to be dozens of suicide attempts. And the court makes no mention of this at all. And so when the court is faced with the mitigation evidence of Farrell's drug and alcohol abuse, he started drinking alcohol, hard alcohol, at 9 and started smoking marijuana at 11. And so the judge, the court says, first used alcohol when he was 9. Vodka and Hennessy. Wow, that's strong stuff. Vodka and Hennessy, age 9. And then with regards to marijuana, he says, smoked marijuana at age 11, five blunts a day. So he smoked a joint now and then. That was the extent of the court's consideration of these incredibly mitigating factors and things that a court should be thinking in conjunction with Farrell's youth and also how they work together. He's an abusive household. He has mental health issues. He's suffering from alcohol and drug abuse. He also joined a gang at the age of 11. And so all of this is happening at the same time. Let me ask a question. How does what you refer to as the preoccupation of the judge with reimposing the 100-year sentence, how does that fit in to his appropriate consideration of the factors? The way that fits in, I would argue, is that lots of times when courts look at these sentencing hearings, kind of like what you asked me, didn't the judge go through these factors? Doesn't it show he talked about these factors? I think the preoccupation with the 100 years and whether he could reimpose it shows that he had already gone into the hearing thinking about whether this was something he could do. And I think some of the comments that he made to the parties, the defense counsel leading up to the sentencing hearing, also discloses what the court's mindset was. Not only does he ask, can I reimpose this sentence? He says that four times. But when the defense counsel was telling him how he would present more mitigating evidence and that the judge this time, per this court's remand, was supposed to consider them carefully, the judge said, I'm sure I said he was a young guy. What else do I have to say? The appellate court did not say the sentence was wrong. They said I did not consider the fact that he was a young guy. I may not have mentioned his age. So if I didn't say he was 16 at the time, I said he was a young guy. So to clarify, I'll say he was 16 instead of a young guy. So they believe that most of what the judge went through were just a bunch of fucking comments? Yeah. Especially since when he continues, he says, I just think it's in some respect ridiculous. I said he was a young guy. What else do they want me to say? Let me ask you, did the state ask that Mr. Morris be resentenced to 100 years at the hearing? I don't remember exactly what the state asked for. I know that they asked for. Or did they not ask for a specific number of years? I believe that may be the case, but I'm not sure exactly. It might be significant because if the trial judge, who was asking whether he could impose the same sentence without the state even asking for it, that might suggest that he had his mind made up already. Right. If I remember correctly, the state did ask for a very significant sentence and certainly not one that wasn't a de facto life sentence. They clearly asked for a sentence that was longer than what we would consider under buffer to be a de facto life sentence. But just to be clear, the minimum here was 26. He quit. There was no mandatory de facto life sentence. Correct. Okay. Correct. So I think just looking at what the judge was saying at this point makes it kind of clear that he did not take these factors seriously. And like we discussed, his focus on this 100-year sentence shows that, you know, he had already gone on there with this predisposition to maybe give the same sentence. And, you know, usually when we're looking at these things, we don't know why a judge may or may not have applied certain factors. But as I mentioned in my briefs, the judge also seemed to have a preoccupation with the new under 21 parole statute.  And it was because of this new parole statute that Miller no longer applied and he could impose a de facto life sentence. The record shows that the sentencing court was very focused on this. He told the parties to keep this statute in mind when writing their sentencing memo. And then this is when he asked if he could theoretically give the same sentence. So he was telegraphing that because he thought this, you know, under 21 parole statute exists, this also gave him the leeway to give this sentence without really considering these factors. But the opportunity for parole doesn't have any impact, does it, on the statutory Miller factors? No. No, not at all. And so that's another problem. Because he kept thinking so much about this parole statute, he did not follow through with his statutory requirements on the judgment from the judge. Another panel of this court in the Elliott case kind of responded the same way as the trial judge. Do you want to take time to respond to that? Yeah. I mean, I would argue that if you really look at Elliott, Elliott relied on the reasoning in People v. Dorsey. And in People v. Dorsey, that dealt with a good conduct credit statute. And they found that that good conduct credit statute, because it would result in earlier release for some inmates, that that made that a meaningful opportunity to obtain release. And so what Elliott said was because the existence of a parole statute, like the good conduct statute, would also be a meaningful opportunity for release. But I think that was a short-sighted reading by the Elliott court. Because if you look at what Dorsey actually says, when Dorsey talks about whether that good conduct statute is an opportunity, a meaningful opportunity for release, it gives four very specific reasons for why that statute is so. First, it says the defendant must be awarded that credit. The defendant gets that automatically. Secondly, he is entitled to keep it as long as it is not revoked, because he committed some kind of disciplinary offense. Third, the defendant is also afforded procedures to protect against arbitrary protection, arbitrary revocation of that credit. And fourth, the defendant may enforce constitutional protections due to judicial review. So the Dorsey court specifically says the Department of Corrections has these due process procedures that protect the defendant, and that is why they found that that was a meaningful opportunity for review. And so this, I think, would be a good time to look at the Under 21 Parole Statute and see why the way it is written, as well-meaning and well-intentioned as it may have been, does not ultimately amount to a meaningful opportunity for review. Except we don't have to reach that question at all. We don't. We don't for the record. But if you were going to, then we should do that. Yes. So if you look at the parole statute, there are a couple of things that on its face make it very different and make it so I don't think it amounts to a meaningful opportunity. So your argument is it's not meaningful because it's all a matter of executive grace. That's part of it. And like I said, what I was saying also was the judicial review. And then also if you just look at the statute as it's written, the parole statute is very limiting. It says that a young offender can first apply for parole for the first time after 20 years. And then if he does not get it after 20 years, he has to wait a minimum of another 10 years before he can apply again. And if he doesn't get it that second time, that's the end. He is foreclosed from ever applying for parole ever again, regardless of how much time is left in his sentence. So that is very limiting. Do we have any numbers available in terms of how parole, I mean parole is not even operating yet. Is it really in Illinois? It's so new. No, it's still so new, but according to what the statute says. But we don't know how it's played out yet in reality. We don't know. But we do know what the statute says it's going to do. And I would argue, even though this was not going into detail in the briefs, and I would be happy to do so in supplemental briefing if you wanted to, to compare Illinois' parole statute to the rest of the parole statutes around the country. I am sure you're going to get a chance to do that in some case, but I don't think it's going to be this one. So just in its case, those are very extreme restrictions. And then also the parole statute in and of itself, there are parts of it that directly conflict with Miller. So first of all, the limiting to just two parole applications, that goes completely against what Miller recognizes as the ability for juvenile offenders to mature over time. So the entire point of Miller is that as a juvenile, you have all these characteristics that make you act and behave in such a way, but as you mature, you have the ability to change. You have the ability to rehabilitate. And so for the parole statute to only give you two opportunities does not really give a juvenile offender the opportunity to present this maturation over time because after the second chance, you're done. And then another part of the parole statute that conflicts with Miller is part of the parole statute says that you should consider factors of youth, but it also has a specific part of the statute that says that no person should be released under this parole statute if it would deprecate the seriousness of the offense. And what Miller said was lots of these cases are going to be very serious. It even recognized that the case in Miller was particularly, I want to say vicious. It was particularly vicious, but that that was not the most important factor to consider when you're talking about juvenile offenders. What Miller said that the most important thing to consider when it comes to juvenile offenders is these characteristics of youth. So for this parole statute to say that the seriousness of the offense comes before these youthful factors, that's in direct conflict with Miller in and of itself. So I think it would be hard to say, given the lack of judicial review, the lack of due process, and these particular characteristics of this parole statute, that this parole statute ultimately amounts to a meaningful opportunity for release such that the court could believe that it made Miller and his progeny inapplicable to it. You're just about out of time, but I do have one last question. Would you agree that the Supreme Court's recent decision in Wilson completely precludes your Eighth Amendment claim given that this was a discretionary life sentence as opposed to a mandatory one? Given what Wilson says, as I wrote in my response, insofar as it precludes Eighth Amendment analysis, yes, I agree. To that extent, Holman under the Eighth Amendment is not as it was before. But as I also argued, it doesn't mean that we still do not have Illinois Proportionate Penalties Clause protections because the Illinois Proportionate Penalties Clause provides broader protection than the Eighth Amendment. That protection clause itself says that there is an objective to release, an objective to rehabilitation. So as Justice Gordon said in his concurrence in Griffin, this broader protection under the protection, the Proportionate Protection Clause, should make it so that what Holman required, where you make a specific finding of permanent incorrigibility, after considering these factors, should set the minimum, it should set the floor for what is required of sentencing courts when they are considering sentencing a juvenile offender to a de facto life sentence. Okay. Anything else? All right. We'll see you in a minute. Good afternoon, Your Honors. Once again, David Greenspan standing in for Margaret Smith on behalf of the people of the State of Illinois. Justices, counsel, may it please the Court. I want to begin by first reminding this Court that as the Justice pointed out earlier in statements, this is a direct appeal. This is not a post-conviction case. This is not a petition for a subsequent petition or any claim of that nature. This is a direct appeal from a sentence, which means that the standard of review before this Court is abuse of discretion and nothing more. So that is the basis from which we are operating. The question before this Court is simply, did the trial court abuse its discretion in imposing the 100-year sentence in light of this Court's instructions? The answer is definitively yes. And as this Court mentioned, there was a recent Supreme Court decision about four weeks ago, People v. Michael Wilson, and as Justice Smith just asked and counsel did effectively concede, Wilson forecloses any claim under the Eighth Amendment here. I should also point out that Wilson explicitly overturned Holman. And so there is no argument here regarding the Holman factors of whether or not the Court made any specific findings regarding the defendant. In fact, the Wilson opinion foreclosed that position entirely by stating, and I quote, this is from paragraph 38, by the way, a discretionary sentencing scheme in itself satisfies Miller's requirement that sentencing courts account for youth and its attendant circumstances. The Supreme Court could not have been clearer in that directive. But not to beat up on you, because you are standing in for a colleague, but as you point out, this is direct appeal, so we don't have to have a constitutional question. We have a statutory question. What about the statute? Correct, Your Honor. There is a statute at play here, but again, the standard of review here is abuse of discretion. What I've seen in counsel's arguments here today are a number of statements regarding the characterizations raised by the trial court, what the trial court said about the defendant, both during sentencing and resentencing. That is an argument that goes to an interpretation of how the trial court weighed the various factors in aggravation and mitigation against the defendant, but it does not address or even come close to establishing that an abuse of discretion occurred. The issue here is, did the trial court abuse its discretion in imposing this sentence? The question of constitutionality is not before the court, as we've very clearly established here. The question then is, what did the trial court do that might have been an abuse of discretion? The defendant has presented nothing. The defendant here has presented a number of characterizations that the court was dismissive, that the court didn't take this case seriously. Those are not legal arguments. Those are policy arguments. So, Ms. Palacio argues that the court was preoccupied with imposing the same 100-year sentence, and if that's the case, then there would really not have been any exercise of discretion at all. Isn't that the case? Respectfully, I would disagree, Your Honor. I disagree with the notion that there's no exercise of discretion or that the court was preoccupied with imposing the same 100-year sentence. I disagree with the premise that the trial court had essentially made its mind up beforehand. Did the State even ask the trial court to reimpose the same 100-year sentence? I don't believe that's germane to the issue before the court, Your Honor. Well, but it could be because if the trial judge raises sua sponte, that might lend credence to the notion that Ms. Palacio argues that this judge was determined to reimpose the same sentence, regardless of what the statutory factors may have required. Respectfully, Your Honor, the trial court is allowed to do that. The trial court under Illinois sentencing jurisdiction is allowed to use its own prior knowledge of the case at bar. So any prior knowledge that the trial court may have had regarding this specific defendant, this specific defendant's demeanor, the evidence at trial, and any prior proceedings would necessarily factor into the judge's sentencing consideration, regardless of whether the judge actually articulated that on the record. By definition, the trial court has to consider all of those factors. Legally, the court is required to consider all of those factors, and that is exactly the point that the Wilson decision gets to. By nature of a discretionary sentence, the judge is required to consider all of these things. And under Illinois sentencing jurisprudence, we are to give great deference to a trial court's discretionary determinations. In order to overturn a trial court's discretionary determination, there must be a showing that the court either affirmatively ignored a factor that it was meant to consider, or it considered a factor incorrectly. We've not seen a showing in either direction in this specific case.  The Illinois case was given directives by this court to reconsider that determination in light of recent case law. And to paraphrase the court, the court essentially responded with, I heard the case, I gave the original sentence, my opinion has not changed. The trial court is allowed to make that determination, and Illinois case law does not require the court to justify every single aspect of its sentence. But when he first sentenced him, there was no requirement that he take any of the Miller factors into account. None. Correct. Because it was a de facto license. There's no requirement that he take them into consideration in this case? Yes, there's the statute. The statute requires that you take specific factors into consideration. That's still the law. And again, Wilson very explicitly held that absence and explicit refusal by the court to consider those factors. That's from a constitutional standpoint, not from a statutory standpoint. That's constitutional. I believe that Wilson is interpreting the Eighth Amendment. It's not interpreting the statute. The statute in this case, Your Honor, I would also remind, was elected by the defendant in this case. Because this was a juvenile matter, the defendant was given the option, and this is all in the record, to be sentenced under the statutory framework that was in effect at the time of the offense or at the time of the new sentencing. Defendant elected to go with the new statutory framework, which is where we have this parole consideration as well. I don't know if you may have answered a question. If you did, my apologies. Did the state ask for a specific term of years in its sentencing memo? According to the record, I did not see any specific requests in that regard. Thank you. Really briefly, I would also like to address this idea that the trial court was required to make specific findings such as permanent incorrigibility or irredeemable corruption. Once again, that argument has been fully dispensed with under Wilson. No such requirement exists. That was a Holman requirement. Holman does not exist. That also was foreclosed by the Jones decision at the U.S. Supreme Court that said that no such findings are required. And I would just remind the Court that the memo of protections really only apply when we're talking about a sentence that constitutes a life sentence under any scenario. That means that there is no sentence that the Court could possibly have given this defendant that would not constitute a de facto life sentence. And that simply isn't the case here. Because he could have been given as little as 26 years. Correct. And your opposing counsel has conceded that. Correct. And regardless, under both Wilson and Dorsey, the parole clause contained in the new sentencing statute, contrary to defendant's arguments here, is in fact a meaningful opportunity for early release. But you would agree with your opposing counsel that we don't need to reach that question if we decide this on statutory grounds. Correct. If we agree with parole on statutory grounds. If this Court were to agree entirely upon statutory grounds, then yes, we would not reach that question. Again, the relevant standard of review, however, is abuse of discretion. And there has been no showing in this matter as to whether or not the Court abused its discretion in imposing this sentence. And just to be sure I understand your argument, are you saying that even if he went in saying, I'm going to give this guy exactly what I gave him before, that's not an abuse of discretion? Not in this circumstance. When the before was before the statute was in place? Your Honor, that statement does not necessarily imply that the trial court had not considered the factors. The issue here is whether or not the trial court considered these factors. It is the defendant's burden to show that the trial court failed to follow the factors or, in fact, affirmatively ignored them or misapplied them. No such showing has been made here. Implicit in the argument that there's, you know, if the trial judge said I'm going to give him the same sentence that I gave him last time, you know, it's not particularly confidence inspiring. But beyond that, it suggests that the court exercised no discretion at all. I mean, isn't that a reasonable interpretation of his statement? I would argue that that is one interpretation, but not the only interpretation, Your Honor. Again, this trial judge... So we should just, you know, have faith that the trial judge exercised some discretion when it determined that I'm going to re-sentence him to the same 100 years? The law explicitly tells us that we must make that presumption unless an affirmative showing has been made to the contrary. It's plain and simple. So, in other words, the trial judge would have had to expressly state on a record, I'm not going to consider any of these statutory factors. Only then can we find that there's an abuse of discretion. Correct, Your Honor, and that is explicitly what Wilson said. Yes, sir. Unless there are any further questions, I don't believe I have anything further to add to this. I thank the court for your time, and we would ask this court to affirm the sentence as given by the trial court. Thank you. Thank you, counsel. Just a few quick points. First, counsel argues that what we have here is an abuse of discretion. But actually, I would argue that the standard of review, whether a court properly considered proper or improper factors in sentencing, is reviewed de novo. As I cite in my brief on page 21 to people, Ebaldahi. And so, with de novo review, I think we can look at this and see that the court did not properly apply the juvenile statutes. But then I would also argue, under any standard of review, that this did not amount to a proper consideration of these juvenile factors. The fact that, you know, it's clear on the record from the court's own statements, alluding to the fact, even before any evidence is presented, that he's already thinking about imposing, re-imposing the exact same sentence. He says that four times, even before any evidence is presented to him. And then he says, he goes at length, instead of talking about the factors, which he, when he did talk about the factors, they were, you know, inadequate at best. Instead of talking about the factors, all he talks about is the parole statute. So I would argue that if you look at the sentencing hearing, it doesn't show any kind of true consideration of these factors that is required under the statute. Mr. Greenspan just said that the only way a judge can be found to have abused his discretion is if he had stated affirmatively that he was not going to consider the statutory factors. Do you agree or disagree? I disagree. And I think we can look at... And that's per Wilson. Per Wilson, I would make the very important distinction that Wilson applies only to the Eighth Amendment. It very specifically says it is only considering this issue under the Eighth Amendment. And then it specifically directs the courtroom, remands the case back down to the appellate court to decide this issue under the Proportionate Penalties Clause. And as I argued, the Proportionate Penalties Clause provides broader protection. And as Justice Gordon said in Griffin, it should provide the baseline. So in terms of counsel arguing that the court doesn't have to do anything with respect to these sentences, no, I do believe that based on Holman and the Proportionate Penalties Clause and its broader protection and its objective towards rehabilitation, that at the very least the court here was supposed to make a finding of a permanent incorrigibility after considering these Miller factors. And aside from that, it was required by law to consider these factors anyways because the statute says so. And the record as we have it does not show that. If I could just respond quickly. The counsel said earlier that pursuant to Jones that there's no requirement to make a finding of incorrigibility. Jones says, yes, Jones says that there does not have to be an explicit or implicit finding, but you have to consider the factors. But Jones also says it doesn't prohibit states from requiring extra findings. And, again, Jones is only about the Eighth Amendment, and Wilson specifically only talked about the Eighth Amendment. So you believe until our Supreme Court directs us otherwise, the law is still that that finding should be made? Yes. Any other questions? No. Thank you both very much. We will take this matter under advisement, and you will hear from us in due course.